UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JANICE NAURICE HAGINS,

     Plaintiff,

       v.                          Case No.  8:24-cv-02129-SPF

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## ORDER

Plaintiff seeks judicial review of the Commissioner's denial of her claim for disability insurance benefits (DIB), which was filed on January 13, 2021.  For the reasons discussed herein, the Commissioner's decision is affirmed.

### I.    Procedural Background

Plaintiff applied for DIB, alleging disability since March 15, 2020 (Tr. 230).  The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 86, 95). Plaintiff then requested an administrative hearing (Tr. 108).  The ALJ held a video hearing on April 24, 2023 (Tr. 46).  All attendants appeared on video with the exception of vocational expert, Nicholas Fidanza, who appeared via telephone (Tr. 48, 50).  A supplemental hearing was held over telephone on January 10, 2024 (Tr. 33).  Plaintiff appeared and testified at both hearings (Tr. 33, 35-38, 46, 52-72).  Following the supplemental hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and therefore denying Plaintiff's claim for benefits (Tr. 17-25). Plaintiff then requested review from the Appeals Council, which was

denied on July 15, 2024 (Tr. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.    Factual Background and the ALJ's Decision

Plaintiff was born in 1959 and claimed disability beginning March 15, 2020 (Tr. 249). Plaintiff completed one year of college and had past relevant work experience as a ticketing clerk (Tr. 73, 312).  Plaintiff alleged disability due to COVID-19, Bell's palsy, high blood pressure, and type II diabetes (Tr. 79).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2024, and had not engaged in substantial gainful activity since March 15, 2020 (Tr. 20).

After conducting the hearings and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine; type II diabetes mellitus; neuropathy; hypertension; and peripheral vascular disease (*Id.*).  Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 21).  The ALJ then concluded that Plaintiff retained the residual functional capacity (RFC) to perform sedentary work as defined by 20 CFR § 404.1567(a) with the following additional limitations:

> The claimant is limited to lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; sitting 8 hours of an eight-hour workday; standing 1 hour of an eight-hour workday, 30 minutes at a time; walking .5 hours (30 minutes) of an eight-hour workday, 10 minutes at a time; frequent handling with the bilateral upper extremities; occasional operation of foot controls with the right lower extremity; no climbing; occasional balancing; no stooping, kneeling, crouching, or crawling; avoiding all exposure to hazards, humidity and wetness, pulmonary irritants, temperature extremes, and vibration; occasional operation of a motor vehicle; and moderate noise environment.

(*Id.*). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 23).

The VE testified that a person with Plaintiff's background and RFC could perform Plaintiff's past relevant work experience as a ticketing clerk (Tr. 24). Based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff was not disabled (Tr. 25). The Appeals Council declined to revise the ALJ's decision, and it therefore became the final decision of the Commissioner.

### III.    Legal Standard

To be entitled to benefits, a claimant must be disabled, meaning she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or will likely last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration has established a standardized "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must determine, in

sequence: 1) whether the claimant is engaged in substantial gainful activity; 2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; 3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and 4) whether a claimant can perform her past relevant work based on her RFC.  If the claimant cannot perform the tasks required of her prior work, step five of the evaluation requires the ALJ to decide if a claimant can do other work in the national economy in view of her age, education, and work experience.  20 C.F.R. § 404.1520(a).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  Simply put, if there exists "more than a mere scintilla" of relevant evidence to support the Commissioner's decision, a court must affirm, regardless of whether a court would have

4

reached a different decision based on the evidence. *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation and internal quotation omitted). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning to determine that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. Review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

**IV.    Analysis**

Plaintiff challenges the ALJ's decision at step four of the sequential evaluation process by arguing that the ALJ (1) improperly evaluated medical opinion evidence; (2) inadequately evaluated Plaintiff's subjective complaints; and (3) insufficiently supported the finding that Plaintiff can frequently handle. The Commissioner counters that the ALJ's decision is supported by substantial evidence and employs the correct legal standards. The Court agrees with the Commissioner as the following explains.

**A.    The ALJ's Rejection of Nurse Practitioner Gail Sadler's Opinion**

As alluded to above, the ALJ's task at step four is to determine a claimant's RFC and her ability to engage in her past relevant work experience. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545. To do so, an ALJ must decide based upon all of the pertinent evidence before her what a claimant can do in a work setting despite any physical or mental restrictions caused by the claimant's impairments and related symptoms. 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ must review the medical opinions of record, as well as all the claimant's medically determinable impairments and the total limiting effects of each. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(3); *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987).

5

A medical opinion comes from a medical source regarding what a claimant may be able to do despite her impairments, including whether the claimant is limited in her capacity to perform various work activities and whether the claimant can see, hear, or use her other senses or "adapt to environmental conditions, such as temperature extremes or fumes." 20 C.F.R. § 404.1513(a)(2). A prior administrative medical finding, on the other hand, is made about a claimant's medical condition by the Social Security Administration's federal and state medical consultants at a prior review of a claimant's disability application. 20 C.F.R. § 404.1513(a)(5). An ALJ is required to consider the opinions from all medical sources and prior administrative medical findings when evaluating a claimant's application for disability. 20 C.F.R. § 404.1520c(b).

The Regulations governing the evaluation of medical opinions and prior administrative medical findings were amended for disability applications filed on or after March 27, 2017, as this one was. 20 C.F.R. § 404.1520c. As to each medical source, the ALJ must consider: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c). But the first two factors are the most important: "Under the new rule, the SSA will consider the persuasiveness of all medical opinions and evaluate them primarily on the basis of supportability and consistency." *Mackey v. Saul*, 2020 WL 376995, at *4, n. 2 (D.S.C. Jan. 6, 2020), citing 20 C.F.R. § 404.1520c(a),(c)(1)-(2) (while there are several factors ALJs must consider, "[t]he most important factors ... are supportability . . . and consistency").

"Supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support her

medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "Consistency" refers to the principle that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). Put differently, the ALJ must analyze whether the medical source's opinion is (1) supported by the source's own records; and (2) consistent with the other evidence of record. *See Cook v. Comm'r of Soc. Sec.*, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021).

When articulating the ALJ's assessment of medical opinions, an ALJ need not assign specific evidentiary weight to medical opinions based on their source. *See Tucker v. Saul*, 2020 WL 3489427, at *6 (N.D. Ala. June 26, 2020). While the ALJ must explain how she considered the supportability and consistency factors, the ALJ need not explain how she considered the other three factors. 20 C.F.R. § 404.1520c(b)(2). And, in assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis – the regulations do not require the ALJ to explain the consideration of each opinion from the same source. *See* 20 C.F.R. § 404.1520c(b)(1). And an ALJ's evaluation of a medical opinion need not repeat a previously stated factual examination of a plaintiff's medical history. *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1273-1275 (11th Cir. 2024). In general, courts consider the regulatory framework as being "highly deferential to the Commissioner." *Anthony v. Kijakazi*,

2021 WL 4304725, at *4 (S.D. Ga. Sept. 3, 2021), *report and recommendation adopted*, 2021 WL 4304721 (N.D. Ga. Sept. 21, 2021).

In the instant case, Plaintiff's primary care provider, Nurse Practitioner Gail Sadler assessed Plaintiff and determined that she could only lift and/or carry ten pounds occasionally and sit, stand, and walk for one hour each during a workday (Tr. 24) (citing Exhibit 22 at 2). The ALJ found that this opinion was "unpersuasive, as the extreme limitations are not supported by the medical evidence of record or the other opinions discussed herein" (*Id.*).

Plaintiff's other medical records included Ms. Sadler's treatment notes and those of other providers, objective testing, and the opinions of three other medical practitioners. Plaintiff's overall treatment for her conditions had been conservative, primarily consisting of medication management, including the treatment of Plaintiff's diabetes which was controlled with insulin (Tr. 22) (citing Exhibits 15F; 25F; and 26F). X-rays of Plaintiff's left and right hands in July 2023 were unremarkable (*Id.*) (citing Exhibit 19F at 2-3). Moreover, x-rays of Plaintiff's cervical and lumbar spine from March 2023 revealed some loss of vertebral disc space height (*Id.*) (citing Exhibit 27F at 9-15). And physical examination notes generally revealed normal findings except for some mid-back tenderness and Plaintiff walked with a slight limp on her right side at times (*Id.*) (citing Exhibit 15F at 2, 7, 9; Exhibit 25F at 2).

Dr. Jose Diaz, a consultative examiner, saw Plaintiff on August 9, 2022 (*Id.*) (citing Exhibit 12F). Dr. Diaz found that Plaintiff had normal sensory reflexes, a normal gait and station, no focal deficits, no evidence of cyanosis, clubbing, or edema in any extremity, and did not use an assistive device (*Id.*). Plaintiff also had a positive Romberg test[1] and a positive

---

[1] "The Romberg test is a simple and short physical test that healthcare providers use to see if a patient has balance issues and to help narrow down the possible causes of them." *Hernandez v. Comm'r of Soc. Sec.*, 2025 WL 1587293, at * n.5 (M.D. Fla. Mar. 25, 2025) (citing *Dooley v. Unum Life Ins. Co. of Am.*, 2023 WL 5955771, at *16 n.1 (S.D. Fla. July 27, 2023)). A Romberg test is positive when a patient

straight leg raise test bilaterally at fifty degrees[2] (*Id.*).  Plaintiff however was noted as having a trigger finger on her left hand, hand grip strength that was reduced bilaterally to 3/5, reduced muscle strength in the bilateral lower extremities to 3/5, and reduced muscle strength in her right upper extremity to 4/5 and in her left upper extremity to 1/5 (Tr. 22-23) (citing Exhibit 12F). He finally concluded that Plaintiff could do work involving sitting, like a desk job or a driver (Tr. 24) (citing 12F). The ALJ found Dr. Diaz's opinion to be partially persuasive (*Id.*).

On August 5, 2023, another consultative examiner, Dr. Christopher Bitetzakis, examined Plaintiff (Tr. 23) (citing Exhibit 20F).  Dr. Bitetzakis found that Plaintiff had reduced muscle strength of the right lower extremity to 3/5 with right hip flexion, extension, abduction, and adduction (*Id.*) (citing Exhibit 20F).  But, with Plaintiff's right leg in flexion, extension, ankle plantar-flexion, and ankle dorsiflexion, Plaintiff's right lower leg extremity strength was only reduced to 4/5 (*Id.*) (citing Exhibit 20F).  Plaintiff was also noted as having some difficulty getting on and off the examination table (*Id.*) (citing Exhibit 20F).

On the other hand, Plaintiff had no joint swelling, tenderness, or deformity and had normal range of motion throughout (*Id.*) (citing Exhibit 20F).  She had normal strength in the bilateral upper extremities, including bilateral hand grip, normal sensation, and a negative bilateral straight leg raise test (*Id.*) (citing Exhibit 20F).  Plaintiff could lift, carry, and handle light objects; perform fine motor skills, such as opening doors, buttoning shirts, and manipulating a coin; walk on her heels and toes; and had a normal tandem walk (*Id.*) (citing

---

loses their balance when she closes her eyes.  *Romberg Test,* CLEVELAND CLINIC, https://my.clevelandclinic.org/health/diagnostics/22901-romberg-test (last visited Aug. 25, 2025).

[2] A straight leg raise test involves an "examiner gently rais[ing] the patient's leg by flexing the hip with the knee in extension, and the test is considered positive when the patient experiences pain along the lower limb in the same distribution of the lower radicular nerve roots." Gaston Camino WIllhuber & Nicolas S. Piuzzi, *Straight Leg Raise Test*, NAT'L LIBRARY OF MED., https://www.ncbi.nlm.nih.gov/books/NBK539717/ (last visited Aug. 25, 2025).

Exhibit 20F).  Plaintiff was also able to "rise from a sitting position without assistance" (*Id.*) (citing Exhibit 20F).

As to Plaintiff's job-related restrictions, Dr. Bitetzakais concluded that Plaintiff could lift up to ten pounds occasionally and carry up to ten pounds frequently and twenty pounds occasionally (*Id.*) (citing Exhibit 20F).  As for sitting, standing, and walking, Plaintiff could sit for eight hours of an eight-hour workday, stand for a total of one hour in an eight-hour workday for thirty minutes at a time, and walk for a total of thirty minutes in an eight-hour workday for ten minutes at a time (Tr. 23-24) (citing Exhibit 20F).  Plaintiff could also tolerate moderate noise level and occasionally balance, climb ramps and stairs, operate foot controls with her right foot, and operate a motor vehicle (Tr. 24) (citing Exhibit 20F).  She could not, however, stoop, kneel, crouch, crawl, or climb ladders, scaffolds, or a few steps at a reasonable pace with the use of a handrail as well as never being able to tolerate exposure to vibrations, unprotected heights, pulmonary irritants, extreme cold, extreme heat, moving mechanical parts, or humidity and wetness (*Id.*) (citing Exhibit 20F). The ALJ found Dr. Bitetzakais's opinion to be persuasive because "it [was] the most consistent with the overall evidence of record" (*Id.*).

Finally, state agency consultant Dr. Thomas Bixler reviewed Plaintiff's disability application upon Plaintiff's request for reconsideration (*Id.*) (citing Exhibit 3A).  Dr. Bixler concluded that Plaintiff could "light exertional work," with some additional limitations (*Id.*) (citing Exhibit 3A).  The ALJ, however, found this opinion unpersuasive because "evidence received at the hearing level supports finding greater limitations as described in this decision" (*Id.*).

Plaintiff now challenges the ALJ's treatment of Ms. Sadler's opinion (Docs. 12, 15), but the Court must first address a preliminary issue. Plaintiff appears to first allege that the Court is unable to meaningfully review the ALJ's conclusion as to Ms. Sadler's opinion because the ALJ did not provide a sufficient reason for her conclusion. (Doc. 12 at 11-12). In her reply, however, she insists her argument is only that the ALJ's conclusion is not supported by substantial evidence. (Doc. 15 at 6). In the interest of completion, the Court will address both arguments.

As noted above, the Court treats the ALJ's factual findings with deference if they are supported by substantial evidence. *Keeton*, 21 F.3d at 1066. "On the other hand, the [ALJ]'s conclusions of law are not presumed valid. The [ALJ]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Id.* (citations omitted). The Court will therefore first determine whether the ALJ fulfilled her legal obligation to provide sufficient reasons for discounting Ms. Sadler's opinion and then, if warranted, the Court will review the ALJ's decision under the substantial evidence standard.

A court should read an ALJ's decision as a whole such that it is not improper for an ALJ to rely upon an earlier, similar factual analysis when rendering a conclusion about a medical opinion. *Raper*, 89 F.4th at 1273, 1275-76 (stating that an ALJ's decision must be read "as a whole, and ... it would be a needless formality to have the ALJ repeat substantially similar factual analyses.") (internal quotation marks and citation omitted).

In the instant case, prior to concluding that Ms. Sadler's opinion was not persuasive, the ALJ spent almost three pages analyzing Plaintiff's medical record (Tr. 21-24). This analysis included records of diagnostic testing with "relatively mild findings," Ms. Sadler's

11

treatment notes which revealed conservative treatment, the medical opinions of Drs. Bitetzakis, Diaz, and Bixler, and unremarkable objective signs and findings, including those from Ms. Sadler's examinations (*Id.*) (citing Exhibits 3A (Dr. Bixler's opinion), 12F (Dr. Diaz's opinion), 15F (Ms. Sadler's treatment notes), 19F (x-ray imaging of Plaintiff's hands), 20F (Dr. Bitetzakis's opinion), 25F (urgent care treatment notes), 26F (treatment notes), 27F (x-ray imaging of Plaintiff's spine)).

Against this backdrop, "it is not as if the ALJ provided 'no explanation' and there is 'no obvious reason for the inconsistency [between the medical opinion and the medical records] in sight.'" *Raper*, 89 F.4th at 1275 (quoting *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1261 (11th Cir. 2019) (per curiam)). Quite the opposite is true.

In *Raper*, the ALJ reviewed a medical opinion to which "some weight" was given but with the caveat that "the extreme limitations noted are not given weight due to their inconsistency with the records." *Id.* at 1267. And, as here, the plaintiff argued that the ALJ's decision was conclusory and lacked sufficient reasons to allows for meaningful review by the court. *Id.* at 1273. The Eleventh Circuit, however, rejected the plaintiff's argument and decided:

> We agree with our sister circuits that "it is proper to read the ALJ's decision as a whole, and ... it would be a needless formality to have the ALJ repeat substantially similar factual analyses" in this circumstance.
>
> . . .
>
> The ALJ explained the weight he afforded the . . . medical opinion and that he did not give the extreme limitations weight due to their inconsistency with the records. Though the ALJ did not repeat his discussion of those records in the same paragraph, he thoroughly discussed those records in the immediately preceding paragraphs where he determined that the records supported a sedentary RFC. Short of re-summarizing or adding an internal citation to those paragraphs, it is hard to imagine how the ALJ could have been clearer.

*Id.* at 1275-76 (quoting *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) and citing *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)).  Such is the case here.  The ALJ's decision about Ms. Sadler's opinion came just after several paragraphs discussing Plaintiff's medical records (Tr. 21-24).  The Court can quite easily discern which records the ALJ relied upon and spot the inconsistencies between Ms. Sadler's opinion and the record.  As such, the ALJ satisfied her legal obligation, and the Court can conduct a meaningful review.

The Court now turns to whether the ALJ's decision was supported by substantial evidence.  Ms. Sadler's own notes showed conservative treatment, and her own observations of Plaintiff were unremarkable (Tr. 22) (citing Exhibits 12F, 25F).  Moreover, the other treatment notes, the opinions on Drs. Diaz and Bitetzakis, and the objective medical evidence also demonstrate that Plaintiff was not as restricted as Ms. Sadler stated.  For example, Dr. Bitetzakis opined that Plaintiff had 5/5 muscle strength in her bilateral upper extremities including bilateral handgrip while Ms. Sadler opined that Plaintiff was only able to lift ten pounds occasionally (Tr. 23).  Moreover, Plaintiff did not report trouble sitting to Drs. Diaz or Bitetzakis (Tr. 22-23) (citing Exhibits 12F, 20F) though Ms. Sadler's May 2022 opinion found that Plaintiff could only sit for one hour per day (Tr. 22, 347).  The conclusion that Ms. Sadler's opinion was unsupported and inconsistent with the record is therefore supported by substantial evidence.

The ALJ's fulsome discussion also rebuts Plaintiff's argument that the ALJ "cherry-picked" facts to support her decision that Ms. Sadler's opinion was unsupported and inconsistent with the record.  (Doc. 12 at 9-10).  An ALJ may not "cherry pick" evidence to support a finding of non-disability.  *Dicks v. Colvin*, 2016 WL 4927637, at *4 (M.D. Fla. Sept. 16, 2016) (finding that the "ALJ is obligated to consider all relevant medical evidence and

may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding.") (quoting *Goble v. Astrue*, 385 F. App'x 588, 593 (7th Cir. 2010)). But the ALJ's decision here provides sufficient information to conclude that the ALJ considered Plaintiff's medical condition as a whole and considered all relevant evidence in her determination. *See Reynolds-Buckley v. Comm'r of Soc. Sec.,* 457 F. App'x 862, 865 (11th Cir. 2012) (finding that an ALJ was not cherry-picking where "the record reflects that the ALJ considered all of the medical evidence ... [and Plaintiff] has not shown that any medical evidence . . . contradicted the ALJ's conclusion.").

That the ALJ compared Ms. Sadler's opinion to that of other medical opinions is of no moment.  As the Commissioner points out, the ALJ should consider whether an opinion is consistent with other evidence in the record, which includes other medical opinions.  20 C.F.R. § 404.1520c(c)(2).

Nor is it dispositive that the ALJ did not explain how she considered the other three factors that may be considered when evaluating a medical opinion.  As a reminder, an ALJ is only required to address consistency and supportability, but she is permitted (though not required) to discuss a medical opinion source's relationship with the claimant; the provider's specialization; and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(b)(2), 404.1520c(c).  Nevertheless, when the ALJ finds "that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ] will articulate how [she] considered the other most persuasive factors[.]"  20 C.F.R. § 404.1520c(b)(3) (citations omitted).  Because

14

the ALJ's decision to find Ms. Sadler's opinion unpersuasive is sound, the ALJ was not required to discuss the other factors.

Finally, Plaintiff's reliance on *Simon* does not require a different outcome. (Doc. 12 at 13) (citing *Simon v. Comm'r of Soc. Sec.*, 7 F.4th 1094 (11th Cir. 2021)). The court in that case found that the ALJ's rejection of a medical opinion was error because there was no "obvious inconsistency" between the doctor's treatment notes relied upon by the ALJ and the doctor's opinion. *Simon,* 7 F.4th 1094 at 1105. Here, however, the ALJ successfully identified those parts of the record that contradicted Ms. Sadler's opinion. By way of example, Ms. Sadler opined that Plaintiff could only sit, stand, and walk for one hour per day and could only occasionally lift to up ten pounds (Tr. 24) (citing Exhibit 22F at 2). On the other hand, Plaintiff's treatment by Ms. Sadler and other providers was conservative, imaging showed mild spinal issues, the objective findings during Plaintiff's physical examinations were not particularly abnormal (including her ability to walk without an assistive device and rise from a seated position), Plaintiff's upper and lower body strength were consistently noted as being three or more out of five with the exception of her non-dominate left arm, and Plaintiff was not noted as being unable to sit (Tr. 21-24). The opinion of Ms. Sadler is therefore "obviously inconsistent" with her own treatment notes and the rest of the medical evidence.[3]

For the foregoing reasons, the ALJ's decision to discount Ms. Sadler's opinion is legally sound and supported by substantial evidence.

---

[3] Another way in which *Simon* could be distinguished is that portion of the case relied upon by Plaintiff interprets Regulations governing medical opinions prior to March 27, 2017, which are not controlling here. *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 896 (11th Cir. 2022); *Epps v. Soc. Sec. Admin., Comm'r*, No. 22-13674, 2024 WL 20837, at *7 n.7 (11th Cir. 2024).

**B.    The ALJ's Treatment of Plaintiff's Subjective Complaints**

In determining whether a claimant is disabled, the ALJ must consider all symptoms, including pain, and the extent to which those symptoms are reasonably consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529(a). Once a claimant establishes that her pain or other subjective symptoms are disabling, "'all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability.'" *Land v. Comm'r of Soc. Sec.*, 843 F. App'x 153, 155 (11th Cir. 2021) (per curium) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)).

The Eleventh Circuit has established a three-part "pain standard" for an ALJ to apply in evaluating a claimant's subjective complaints. The standard requires: (1) evidence of an underlying medical condition; and either (2) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (3) that the objectively determined medical condition is of such severity it can reasonably be expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). "When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." *Davis v. Astrue*, 287 F. App'x 748, 760 (11th Cir. 2008) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)). If an ALJ rejects a claimant's subjective testimony, she must articulate explicit and adequate reasons for her decision. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curium).

16

Social Security Ruling (SSR) 16-3p cautions that "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 4790249 (Oct. 25, 2017). Regulations require an ALJ to consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the record. 20 C.F.R. § 404.1529(a). The regulations define "objective evidence" to include medical signs shown by medically acceptable clinical diagnostic techniques or laboratory findings. 20 C.F.R. § 404.1529. "Other evidence," again as the regulations define, includes evidence from medical sources, medical history, and statements about treatment the claimant has received. See 20 C.F.R. § 404.1513. Subjective complaint evaluations are the province of the ALJ. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014).

Plaintiff testified at the first hearing that she experienced severe intermittent pain related to her right hip and back (Tr. 65). She claimed that this pain is triggered by sitting for prolonged periods of time, exceeding "an hour or two" (*Id.*). To alleviate the pain, Plaintiff stated that she must stop sitting and lie down until the symptoms abate (Tr. 72). Plaintiff also testified that her fingers got stuck in a curved position such that she must pull them to make them straight and hindered her ability to grip and turn objects like the lid of a jar (Tr. 61-62).

In her decision, the ALJ referenced Plaintiff's subjective complaints and the Eleventh Circuit's pain standard as well as her duty to account for all of Plaintiff's symptoms and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence" (Tr. 21) (citing 20 C.F.R. § 404.1529; SSR 16-3p, 2017 WL 4790249). The ALJ also made an express credibility determination regarding Plaintiff's complaints of pain as follows:

17

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record.

(Tr. 23). This language directly addresses the Eleventh Circuit's pain standard and is not improper if supported by substantial evidence. *See Danan v. Colvin*, 2013 WL 1694856, at * 3 (M.D. Fla. Mar. 15, 2013).

In addition to the medical source and other objective evidence described in Section 4.A herein, the ALJ discussed Plaintiff's activities of daily living (Tr. 23). Plaintiff reported relatively normal daily activities, including cooking, performing household chores, shopping for groceries, driving, and managing her finances (*Id.*). Moreover, Plaintiff's Adult Function Report indicated that she performed the following tasks on a daily basis without assistance: showering, dressing herself, preparing meals, completing household chores, driving, shopping for groceries, managing finances, and visiting family members (Tr. 22) (citing Exhibit 11E). Plaintiff also represented that she had difficulty squatting, bending, standing, kneeling, and seeing but not sitting (*Id.*). Finally, the ALJ noted Plaintiff's symptoms of "fatigue, shortness of breath, brain fog, numbness and tingling in both feet, muscle aches, insomnia, right hip and leg pain, right shoulder pain, and malaise" (*Id.*) (citing Exhibits 13F, 15; Hearing Transcript).

Plaintiff now challenges the ALJ's discounting of her pain and other symptoms because the ALJ did not discuss Plaintiff's testimony about the difficulties she has using her hands and her need to lie down. The Court is unpersuaded.

As an initial matter, the ALJ did note Plaintiff's complaints of pain, including her "right hip and leg pain" Tr. 22 (citing Exhibits 13F, 15F, Hearing Transcript). Regardless,

18

the ALJ is not obligated to discuss "every piece of evidence." *Dyer*, 395 F.3d at 121. The ALJ "need not cite particular phrases or formulations" in conducting an assessment of a claimant's symptoms so long as the reviewing court can be satisfied that the ALJ "considered [the claimant's] medical condition as a whole." *Chatham v. Comm'r of Soc. Sec.*, 764 F. App'x 864, 868 (11th Cir. 2019) (per curiam) (internal quotation marks and citation omitted); *see also Stowe v. Soc. Sec. Admin., Comm'r*, 2021 WL 2912477, at *4 (11th Cir. July 12, 2021) (per curiam) (explaining that if an ALJ does not identify specific and adequate reasons for rejecting a claimant's testimony about pain, "the record must be obvious as to the [ALJ's] credibility finding") (citing *Foote*, 67 F.3d at 1561–62).

Furthermore, the ALJ engaged in an extensive examination of Plaintiff's medical records. Plaintiff had a history of diagnosed conditions such as type II diabetes mellitus with diabetic polyneuropathy and reported issues including fatigue, numbness and tingling in the feet, and muscle aches (Tr. 22). Plaintiff's diabetes was controlled with insulin and Plaintiff's treatment for her conditions were "conservative, consisting primarily of medication management" (*Id.*). Imaging of Plaintiff's left and right hands in July 2023 were unremarkable and images of her spine from March 2023 revealed mild abnormalities (*Id.*) Her treatment notes further generally showed normal findings except for some back tenderness and, at times, a limp on the right side (*Id.*). Moreover, in Plaintiff's June 2022 Adult Function Report, she did not report that her impairments impacted her ability to sit (Tr. 22, 347).

Moreover, Drs. Diaz and Bitetzakis found Plaintiff had a normal gait and did not use an assistive device (Tr. 22). Dr. Diaz also saw that Plaintiff had normal sensory reflexes, no focal deficits, and no edema (Tr. 22-23) while Dr. Bitetzakis further found that Plaintiff no joint swelling, tenderness, or deforming; normal range of motion including of the hands and

fingers; normal (5/5) strength in the bilateral upper extremities, including bilateral hand grip; normal sensation; and a negative straight leg raise test (Tr. 23). Plaintiff could also lift, carry, and handle light objects, could perform fine motor skills, such as opening doors, buttoning shirts, and manipulating a coin; could rise from a sitting position without assistance; could walk on heels and toes; and had a normal tandem walk (*Id.*).

 In light of the ALJ's thorough analysis of Plaintiff's medical record and subjective complaints, the Court is satisfied that the ALJ considered Plaintiff's condition as a whole and concludes that the ALJ's finding is supported by substantial evidence. *Foote*, 67 F.3d at 1562 (citation omitted) (stating that a reviewing court will not disturb a clearly articulated credibility finding made by an ALJ that is supported by substantial evidence).

### C.     The ALJ's Finding that Plaintiff Can Frequently Handle

As discussed previously, to allow for meaningful judicial review, the ALJ must "state with clarity" the reasons for her decision. *Sturdivant v. Soc. Sec. Admin., Comm'r*, No. 22-13952, 2023 WL 3526609, *4 (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  In the absence of such explanation, "'to say that [the ALJ's] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" *Winschel*, 631 at 1179 (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).

Similarly to Plaitniff's assertion that the ALJ did not adequately explain her decision to discount Ms. Sadler's opinion, Plaintiff lastly argues that the ALJ failed to clearly articulate the reasons underpinning her determination that the Plaintiff could "frequent[ly] handl[e] with the bilateral upper extremities" and the medical evidence on record.  (Doc. 12 at 3, 14). A claimant's ability to handle relates to "[s]eizing, holding, grasping, turning, or otherwise

working with the hand or hands. Fingers are involved only to the extent that they are an extension of the hand[.]" *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, App. C.  And, a limitation to a frequency of handling to "frequently" means that the claimant is able to handle one-third to two-thirds of the eight-hour workday as opposed to "constantly" handling all day.  *Id.*  The job of a ticketing clerk requires a claimant to be able to frequently handle.  *Dictionary of Occupational Titles*, § 248.382-010, 1991 WL 672300.

At the April 2023 hearing, Plaintiff testified that her fingers "get stuck" and she had to manually straighten them out, "but it'll curve and it'll stay like that especially at night" (Tr. 61).  She further testified that she discussed this issue with her doctor who diagnosed the problem as trigger finger (*Id.*).  Plaintiff's doctor then gave her "a shot of steroids" that "helped a little bit" except for at night (Tr. 61-62).  Then, when asked if she was still having issues during the day, Plaintiff shared that she struggled to grip and couldn't "turn anything like a jar of sauce." (Tr. 62).

Then, in her decision, the ALJ attested that she "considered all symptoms and the extent to which" they were consistent with the medical evidence (Tr. 21).  She went on to cite the unremarkable x-rays of Plaintiff's left and right hands from July 2023 (Tr. 22). Furthermore, the ALJ noted that Dr. Bitetzakis's August 2023 exam indicated that Plaintiff had no limitations in her reaching, handling, fingering, feeling, and push/pull abilities; a normal range of motion including of the hands and fingers; normal (5/5) strength in the bilateral upper extremities, including bilateral hand grip, and normal sensation; and could lift, carry, and handle light objects, perform fine motor skills, such as opening doors, buttoning shirts, and manipulating a coin (Tr. 23).  Moreover, the ALJ explained that Plaintiff reported

21

she could care for herself, prepare meals, and complete household chores (*Id.*).  Though Dr. Diaz, whose opinion the ALJ partially credited, noted Plaintiff had a "trigger finger [o]n the left hand" and reduced bilateral upper body and hand strength (Tr. 22-23).

Against this backdrop, a fair reading of the ALJ's decision reveals that the ALJ considered Plaintiff's complaints about her hands and accounted for them in the RFC determination by limiting Plaintiff to frequent handling.  At base, it is Plaintiff's burden to demonstrate the existence of her disability, and she did not meet that burden here.  *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)); *see also Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278–79 (11th Cir. 2020) (stating that that a claimant has the burden of proof through step four).

Though Plaintiff relies upon *Caruthers* to support her position, that case is inapposite. (Doc. 15 at 9-10).  In that case, the district court reversed the ALJ's decision to assign the plaintiff the limitation of being "off task an average of 5% each hour and absent from work on average one day each quarter."  *Caruthers v. Comm'r of Soc. Sec.*, 2025 WL 37461, at *1 (M.D. Fla. Jan. 7, 2025).  However, the medical evidence discussed by that ALJ showed the plaintiff had "normal concentration and no limitations in her ability to concentrate."  *Id.*  The court therefore reasoned that the ALJ did

> not explain in any detail how he determined the Plaintiff would be off task an average of 5% each hour, as opposed to 15% or some other percentage, and would be absent from work on average one day each quarter, as opposed to missing work two days each quarter or one day per month in each quarter. These figures are not based on any particular medical evidence, opinion, or subjective testimony.

*Id.* at *4.  Conversely, here, the ALJ discussed medical evidence, medical source opinion, and testimony that described the condition of Plaintiff's hands, but determined that it did not rise

22

to the level of being disabling. As such, the Court concludes that the ALJ's limitation of frequent handling is supported by substantial evidence.[4]

## V. Conclusion

ORDERED:

1. The decision of the Commissioner is affirmed.

2. The Clerk is directed to enter final judgment for Defendant and close the case.

**ORDERED** in Tampa, Florida, on August 26, 2025.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

---

[4] Plaintiff's argument that the ALJ "failed to build a logical bridge" from the evidence of Plaintiff's testimony about her hands and needing to lie down does not change the Court's decision. (Doc. 12 at 14-15). "The 'logical bridge' language does not alter the applicable substantial evidence standard, which the ALJ here has satisfied." *Broomfield v. Kijakazi*, 2023 WL 6376456, at *8 n.8 (M.D. Fla. Sept. 29, 2023) (citing *Brumbaugh v. Saul*, 850 F. App'x 973, 977 (7th Cir. 2021) for the finding that the "logical bridge" language is descriptive and not a change to the substantial evidence standard).